# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | Cr. No. 20-20154-MSN |
| | * | |
| **CECILIO GONZALEZ-ESPINO,** | * | |
| | * | |
| **Defendant.** | * | |

## MOTION TO SUPPRESS EVIDENCE
## AND INCORPORATED MEMORANDUM

Defendant Cecilio Gonzalez-Espino, through counsel, hereby moves to suppress any statements that he allegedly made during custodial interrogation in violation of *Miranda*. Mr. Gonzalez-Espino also reserves the right to seek suppression of any physical evidence resulting from unwarned statements if those statements were involuntary or coerced within the meaning of the Fifth Amendment.

On August 11, 2020, six immigration officers converged outside a residence in Memphis. The officers arrested Mr. Gonzalez-Espino on suspicion of illegal re-entry. The officers removed Mr. Gonzalez-Espino from a Chevy Silverado and asked him in English, and then in Spanish, whether he had a weapon or firearm. Mr. Gonzalez-Espino allegedly responded that he had a firearm in the center console of the truck. The officers went in the truck and opened the console and found a Smith & Wesson pistol. A federal grand jury later returned a two-count indictment against Mr. Gonzalez-Espino alleging illegal re-entry and unlawful possession of a firearm by an undocumented alien.

Mr. Gonzalez-Espino now moves to exclude his initial statement regarding a firearm in the truck. The immigration officers had Mr. Gonzalez-Espino "in custody" and "interrogated" him within the meaning of *Miranda* when they removed him from the Chevy and asked whether he had a weapon or a gun. The officers did not advise Mr. Gonzalez-Espino under *Miranda* during this initial exchange requiring exclusion of his incriminating statements.

Mr. Gonzalez-Espino also reserves the right to seek suppression of the firearm found inside the truck. A *Miranda* violation, standing alone, does not require suppression of any physical evidence found as a result of a *Miranda* breach. The Sixth Circuit, however, has explained that courts must still suppress any physical evidence found as a result of an unwarned statement if the statement was "involuntary" or "coerced" within the meaning of the Fifth Amendment. A *Miranda* violation raises at least a legal presumption of coercion. Furthermore, the government bears the burden to establish that any statements were voluntary. Mr. Gonzalez-Espino holds the government to its burden and reserves the right to seek suppression of the Smith & Wesson firearm.

## BRIEF BACKGROUND[1]

On August 11, 2020, U.S. Immigration and Customs Enforcement ("ICE") officials went to a residence in Memphis. At least six officers were present. All wore protective vests displaying the word "POLICE." The officers were looking for Mr. Gonzalez-Espino because they suspected that he had illegally re-entered the country. The officers allegedly surveilled the residence. They allegedly saw Mr. Gonzalez-Espino come out of the front door. He went to a black Chevy Silverado that was parked in front of the house. He got inside and started to drive. The officers

---

[1] David Gilliam is a Special Agent with U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations. Agent Gilliam completed an Affidavit in connection with a Criminal Complaint. Agent Gilliam also testified at Mr. Gonzalez-Espino's probable cause and detention hearing. This background section is derived from the allegations in the Criminal Complaint and testimony at the probable cause and detention hearings. The defense does not necessarily accept all allegations or attested facts but recites them here for purposes of discussion.

immediately pulled out of their surveillance areas and stopped the Silverado before it could leave the premises. The officers quickly removed Mr. Gonzalez-Espino from the car. It is undisputed that all six officers, with "Police" emblazoned on their vests, were on the scene. After the officers removed Mr. Gonzalez-Espino from the truck, the officers allegedly asked (and asked again) if he had a weapon or a firearm. As described in the government's Criminal Complaint Affidavit:

> At the time of arrest Gonzalez-Espino was seated in a black Chevrolet pickup truck in front of the residence. When approached by [ ] Deportation Officers he was asked if he had any weapons on him, to which he replied that he did not. When asked specifically in the Spanish language if he had a gun, he stated that he has a gun in the console of the truck next to his wallet.

(ECF No. 1-1, Affidavit in support of Criminal Complaint, ¶ 7 at PageID 3). The officers then went in the Chevy Silverado and discovered a Smith & Wesson 9mm pistol in the center console.

The officers later read Mr. Gonzalez-Espino his *Miranda* rights and transported him to an immigration enforcement office in Memphis. (*See id.*, Affidavit, ¶ 8 at PageID 4). On August 12, 2020, the government obtained a Criminal Complaint against Mr. Gonzalez-Espino alleging illegal re-entry in violation of 8 U.S.C. § 1326(a) and unlawful possession of a firearm by an undocumented alien in violation of 18 U.S.C. § 922(g)(5). (*See* ECF No. 1). On August 20, 2020, a federal grand jury returned a two-count indictment asserting the same violations under §1326(a) and § 922(g)(5). (*See* ECF NO. 16).

## **ARGUMENT**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "addressed the problem of how the privilege against compelled self-incrimination guaranteed by the Fifth Amendment could be protected from the coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation."

3

*Berkemer v. McCarty*, 468 U.S. 420, 428 (1984). The Supreme Court held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* In the years since *Miranda*, the Supreme Court has "frequently reaffirmed the central principle established by that case: if the police take a suspect into custody and then ask him questions without informing him of the rights enumerated above, his responses cannot be introduced into evidence to establish his guilt." *Berkemer*, 468 U.S. at 429.

**I.      The Court Should Suppress Mr. Gonzalez-Espino's Statement That He Had a Gun in the Center Console of the Truck**

*Miranda* requires suppression of Mr. Gonzalez-Espino's initial statements to immigration officers that he had a gun in the center console of the truck. Because these statements were made in response to "custodial interrogation" absent *Miranda*, the Court should exclude these incriminating statements at trial.

A threshold issue in the *Miranda* analysis is whether an individual was in custody. "In determining whether a defendant is in custody for purposes of *Miranda*, a court must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *United States v. Mitchell*, 161 Fed. Appx. 537, 540 (6th Cir. 2006) (quoting *Yarborough v. Alvarado*, 541 U.S. 652 (2004)). The *Miranda* custody analysis involves an "objective test" with "two discrete inquiries": (1) "what are the circumstances surrounding the interrogation"; and

(2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Id.*  The Sixth Circuit has also considered the following factors in evaluating this inquiry:  "'(1) the location of the interview; (2) the length and manner of questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions.'" *United States v. Malcom*, 435 Fed. Appx. 417, 421 (6th Cir. 2011) (quoting *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)).

*Mitchell* is particularly instructive here.  In *Mitchell*, two individuals parked in front of an apartment, went inside, and came outside and returned to their car.  *Mitchell*, 161 Fed. Appx. at 539.  Four officers wearing "plain clothes and . . . carrying concealed weapons" approached the vehicle.  *Id.*  The officers "showed the [defendants] their badges and requested that [the defendants] turn off the car and exit the vehicle."  *Id.*  The officers stated that they were involved in a drug trafficking investigation and took one defendant "to the front of the car to be questioned while [the second defendant] was taken to the rear of the car."  *Id.*  The Sixth Circuit held that, under these circumstances, the two defendants were "in custody" for purposes of the Fifth Amendment triggering their rights under *Miranda*:

> Given these circumstances, we conclude that a reasonable person in Barbara or Kevin Mitchell's position would not have felt at liberty to terminate the interrogation and leave.  Although the police did not display their guns or threaten the Mitchells, the officers's stop of the Mitchells's car and the quantity of officers involved in the stop would certainly have been intimidating to a reasonable person.  Moreover, the officers's statements that they were questioning the Mitchells in connection with a drug trafficking investigation, their orders that the Mitchells exit the vehicle and their questioning of the Mitchells in separate locations, all suggest an interrogation environment in which a reasonable person would not have felt free to end the questioning and walk away.  As a result, we conclude that the Mitchells were in custody and thus the officers were required to provide the Mitchells with a *Miranda* warning prior to the interrogation.

*Mitchell*, 161 Fed. Appx. at 540.

Likewise, no reasonable person in Mr. Gonzalez-Espino's position would have felt that he could simply end the encounter and walk away.  Mr. Gonzalez-Espino was in his truck and still near the driveway when officers stopped him.  At least six officers were present.  All were wearing vests emblazoned with the word "POLICE" – a near universal sign of authority.  The officers removed Mr. Gonzalez-Espino from the truck.  When an officer asked Mr. Gonzalez-Espino if he had any weapons, Mr. Gonzalez-Espino allegedly said no, which prompted another officer to ask again if he had a firearm.  The officers did not tell Mr. Gonzalez-Espino that he could leave.  Nor did the officers tell him that he could disregard their questions.  Mr. Gonzalez-Espino was also allegedly in the country illegally.  A reasonable person in Mr. Gonzalez-Espino's position would immediately understand that he was in custody for the foreseeable future with six officers converging on him simultaneously.  Given these circumstances, no reasonable person would have felt that he was at liberty to terminate the encounter and leave so that he was in "custody" for purposes of *Miranda*.

Mr. Gonzalez-Espino was also subject to custodial "interrogation."  The Supreme Court has explained that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Asking a person in custody whether he is in possession of a weapon constitutes interrogation.  *See, e.g.*, *Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (observing that "the government concedes that Williams' alleged statement satisfies the threshold conditions of *Miranda* (*i.e.*, that the officers had Williams in custody and had not advised him of his rights when they asked him whether he had any weapons)"); *United States v. Landor*, 699 F. Supp. 2d 913, 921 (E.D. Ky. 2009) (finding custodial

6

"interrogation" where an officer "was just trying to determine did the weapon belong to him, whose was it, what his intent was").

The government also cannot rely on the "public safety exception" to *Miranda* to justify their inquiries about a weapon or firearm. *See New York v. Quarles*, 467 U.S. 649, 659 (1984). This exception only applies "'when officers have a reasonable belief based on articulable facts that they are in danger.'" *Williams*, 483 F.3d at 428 (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, *and* (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* (emphasis added). There is no evidence that the immigration officers converging on Mr. Gonzalez-Espino had any reason to believe that either condition existed so as to trigger the public safety exception to *Miranda*.

## II. Mr. Gonzalez-Espino Reserves the Right to Seek Suppression of the Firearm

Mr. Gonzalez-Espino also reserves the right to seek suppression of the Smith & Wesson pistol on grounds that its discovery was the result of statements that were involuntary or coerced.

In pursuing this contention, the defense acknowledges that there is a substantial hurdle in light of *United States v. Patane*, 542 U.S. 630 (2004). In *Patane*, the Supreme Court held that a failure to give a suspect *Miranda* warnings does not require suppression of the *physical* fruits of the suspect's unwarned but voluntary statements. *See id.* at 642-44. The Supreme Court reasoned that *Miranda* is a prophylactic rule that "sweep[s] beyond the actual protections of the Self-Incrimination Clause," and any remedy for a *Miranda* violation is limited to exclusion of the unwarned statement. *Id.* at 639; *see also Oregon v. Elstad*, 470 U.S. 298, 307 (1985) ("Thus, in the individual case, *Miranda's* preventive medicine provides a remedy even to the defendant who

has suffered no identifiable constitutional harm.").

Even so, a court must suppress and exclude physical evidence if its discovery was the result of statements that were "involuntary" or "coerced" within the core meaning of the Fifth Amendment. *See Patane*, 542 U.S. at 635 (holding that *Miranda* does not require suppression of physical fruits of unwarned but *voluntary* statements). The Sixth Circuit recently elaborated on this interplay between *Miranda* and coercion and voluntariness and the exclusion of physical evidence:

> In sum, a failure to provide a *Miranda* warning, standing alone, cannot justify the exclusion of physical evidence found because of the unwarned statements. *Patane*, 542 U.S. at 639, 124 S. Ct. 2620. Typically, "the exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation." *Id.* at 641–42, 124 S. Ct. 2620 (quotation marks, brackets, and ellipses omitted). But unwarned statements must still have been voluntarily made. *Id.* at 636, 124 S. Ct. 2620 ("The Self-Incrimination Clause ... is not implicated by the admission into evidence of the physical fruit of a *voluntary* statement.") (emphasis added). If the statements were "actually coerced," then their physical fruits must also be excluded. *Id.* at 644, 124 S. Ct. 2620. Thus, whether to admit physical evidence found because of an un-*Mirandized* statement is ultimately a question of voluntariness.

*United States v. Burton*, 828 Fed. Appx. 290, 292-93 (6th Cir. 2020); *see also, e.g.*, *United States v. Hallford*, 816 F.3d 850, 856 (D.C. Cir. 2016) (similarly construing *Patane* and the test for exclusion of physical evidence).

To determine whether a statement is involuntary, courts look to the totality of the circumstances. *See United States v. Clayton*, 937 F.3d 630, 641 (6th Cir. 2019); *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). Three factors affect the voluntariness of a statement: whether "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Mahan*, 190 F.3d at 422. Relevant factors in this inquiry "include the defendant's age, education and intelligence, his previous

interactions with the criminal justice system, the length and extent of questioning, and the use of physical coercion such as deprivation of food or sleep." *Clayton*, 937 F.3d at 641 (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994)).

Mr. Gonzalez-Espino reserves the right to assert that his initial statements regarding the firearm in the console were involuntary and, consequently, the resulting Smith & Wesson pistol should be suppressed. Mr. Gonzalez-Espino asserts at the threshold that there was a *Miranda* violation. While a *Miranda* violation does not necessarily prove coercion, it establishes, at a minimum, a legal presumption of coercion. *See Patane*, 542 U.S. at 639 (observing that "the *Miranda* rule creates a presumption of coercion"); *Elstad*, 470 U.S. at 307 (observing that a "[f]ailure to administer *Miranda* warnings creates a presumption of compulsion"); *id.* at 306 n.1 (noting that "[a] *Miranda* violation does not constitute coercion but rather affords a bright-line, legal presumption of coercion"). Furthermore, the government ultimately bears the burden to establish that any statement was made voluntarily and free of coercion. *See Mahan*, 190 F.3d at 422 ("When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary."). Mr. Gonzalez-Espino holds the government to this burden. If the government is unable to satisfy its burden at an evidentiary hearing, Mr. Gonzalez-Espino will seek a judicial determination that his initial statements regarding a firearm were involuntary and that the resulting Smith & Wesson pistol should be suppressed.

## CONCLUSION

Mr. Gonzalez-Espino requests that the Court grant his motion to suppress evidence.

> Respectfully submitted,
>
> DORIS RANDLE-HOLT
> FEDERAL DEFENDER
>
> *s/ Unam Peter Oh*
> Assistant Federal Defender
> 200 Jefferson Avenue, Suite 200
> Memphis, TN 38103
> (901) 544-3895

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Mr. Scott Smith, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 16th day of December, 2020.

> *s/ Unam Peter Oh*
> Assistant Federal Defender